UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JENNIFER K.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No.  22-cv-03420-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 20 |

## INTRODUCTION

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability employment benefits under Title XVI of the Social Security Act. *See* Admin. Rec. ("AR") at 17-31.[2] Plaintiff filed her application in March of 2018, alleging an onset date of December 25, 2011. AR at 280-83. The claim was denied initially, and upon reconsideration. *Id.* at 105-09, 112-16. Following two administrative hearings—on November 7, 2019 and May 10, 2021—an ALJ entered an unfavorable decision on June 29, 2021, finding Plaintiff not disabled. *Id.* at 17-31, 43-76. In April of 2022, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-3.[3] In June of 2022, Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated. Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 11, 12). Plaintiff has moved for summary judgment and Defendant has

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which has been independently paginated, has been filed in fourteen (14) attachments to Docket Entry #14. *See* (dkts. 14-1 through 14-14).

[3] In light of the Appeals Council's denial, the ALJ's decision is the "final decision" of the Commissioner of Social Security—which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

moved for remand (dkts. 15, 20). For the reasons stated below, Defendant's Motion is **GRANTED**, Plaintiff's Motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Order.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NRLB*, 205 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE CLAIMS

The Parties do not dispute that the ALJ's decision was erroneous. Instead, the dispute centers around the extent of the ALJ's errors, as well as whether the case should be remanded for a calculation of benefits or for further proceedings.

Plaintiff argues that the nondisability decision was erroneous because the ALJ: (1) improperly rejected Plaintiff's pain and symptom testimony, as well as the third-party testimony of Plaintiff's mother (2) undertook a flawed analysis of the relevant Listings, and (3) improperly evaluated the relevant medical opinions. Pl.'s Mot (dkt. 15) at 7-22. Plaintiff further argues that the requirements of the credit-as-true rule are satisfied, and therefore this court should remand the

1  case for a calculation of benefits. *Id.* at 22-23.

2  Defendant concedes that the ALJ erred in assessing Plaintiff's pain and symptom testimony. Def's Mot. (dkt. 20) at 2-8. As such, Defendant requests that the case be remanded for further development of the record and to allow an ALJ to reevaluate Plaintiff's pain and symptom testimony. *Id.* at 2. Defendant appears to contend that the remainder of the ALJ's decision is free from reversible error. *Id.* at 2-8. Regardless, Defendant argues that remand for calculation of benefits is inappropriate given that "[s]ignificant inconsistencies in the evidence must be resolved . . . ." *Id.* at 4; *see also id.* at 5 ("T]here are conflicts and inconsistencies in the evidence which preclude automatic payment of benefits.").

**SUMMARY OF THE RELEVANT EVIDENCE**

As discussed in detail below, the court finds that the record has not been fully developed and thus further administrative proceedings would serve a useful purpose. Because Plaintiff's claims largely revolve around the evaluation of certain medical evidence, as well as Plaintiff's own pain and symptom testimony, the following is a brief summary of the evidence that is relevant to those claims.

At the hearing on May 10, 2021, Plaintiff testified to the following: that she completed high school on independent study because she was "sick all the time"; she cannot cook or prepare meals for herself, other than heating up leftovers or pre-made meals in the microwave; she last left her home about a week prior to the hearing; she cannot go to the store by herself; she sometimes is "too tired" to take her medications and needs assistance from her mother; her medications occasionally give her body aches, irritability, depression, anxiety, headaches, and lightheadedness; her mother drives her to appointments; she no longer attends counseling because "[t]here wasn't really anything else she [could] do for me"; she sometimes reads, but can only do so for roughly twenty (20) minutes before getting a migraine; she can only use a computer for a few minutes before getting a migraine; she gets migraines every day, which last the entirety of the day; she does not engage in exercise or physical activity because she does not have the energy; and, when she tries to engage in physical activity she will "crash," meaning that she "get[s] really tired, no energy, sore throat, fever, body hurts." AR at 64-72.

1    Plaintiff's mother, Teresa Knox, also provided testimony at the hearing. *Id.* at 61-64. Ms.
2 Knox testified as to what a "typical day" looks like for Plaintiff: she will sleep ten (10) to twelve
3 (12) hours; Ms. Knox will make all of Plaintiff's meals; she is "pretty much bedridden" and "just
4 in her bed all day"; she will watch television for thirty (30) minutes before having to rest; and, she
5 will take a shower roughly once a week, but usually needs assistance from Ms. Knox because she
6 gets sick. *Id.* at 62. On a "bad day," however, Plaintiff will: wake up crying and constantly tell Ms.
7 Knox "how terrible she feels"; sleep for twenty-four (24) to thirty-six (36) hours straight; not eat;
8 and, complain that "her throat is sore, her bones are aching so bad, [and] her muscles are aching."
9 *Id.*

10    As to the medical evidence, Plaintiff's argument focuses on the opinions of three medical
11 sources: Dr. DeSousa, Dr. McMillan, and Dr. Bonilla. *Id.* at 14-22. Dr. DeSousa, a State Agency
12 Medical Consultant, reviewed the relevant medical records and opined that Plaintiff maintained
13 the ability to: lift and carry twenty-five (25) pounds occasionally and frequently; stand and/or walk
14 for about six (6) hours in an eight (8) hour workday; sit for more than six (6) hours in an eight (8)
15 hour workday; frequently climb ramps and stairs; and, occasionally climb ladders, ropes, and
16 scaffolds. *Id.* at 98. Dr. DeSousa also found that there was "no evidence[] for fulfillment of the
17 criteria for [Chronic Fatigue Syndrome] CFS . . . ." *Id.* at 94.

18    Dr. McMillan completed a consultative examination of Plaintiff, which included a clinical
19 interview, a review of the relevant medical records, and a physical examination. *Id.* at 768-71.
20 Ultimately, Dr. McMillan's diagnostic impressions were: (1) History of fatigue; (2) Migraine
21 headaches; and, (3) Iron deficiency anemia. *Id.* at 771. Dr. McMillan also opined that Plaintiff
22 maintained the ability to: lift and carry fifty (50) pounds occasionally and twenty-five (25) pounds
23 frequently; stand and/or walk for at least six (6) hours in an eight (8) hour workday; engage in
24 activities that require stooping, kneeling, and crouching for at least one-third (1/3) of an eight (8)
25 hour workday. *Id.*

26    Dr. Bonilla began seeing Plaintiff in March 2019, as a patient at Stanford's Chronic
27 Fatigue Syndrome Clinic. *Id.* at 797. Over the next few years, Plaintiff was seen (often remotely)
28 by Dr. Bonilla and his colleagues Ms. Hall (PA) and Ms. Kandan (PA). *Id.* at 681-727, 764-67,

4

779-80, 788-830, 834-38. Dr. Bonilla and his colleagues provided several opinions with respect to Plaintiff's condition. In June of 2020, for example, Dr. Bonilla opined to the following: "It is our professional opinion that [Plaintiff] meets the criteria for Chronic Fatigue Syndrome (CFS) . . . as defined by the International Chronic Fatigue Syndrome Study Group . . . and supported by the Centers for Disease Control and Prevention (CDC)." *Id.* at 797. Dr. Bonilla continued by providing that, "[u]ntil her fatigue has measurably improved, I recommend that [Plaintiff] refrain from any strenuous activities, both physical and cognitive." *Id.* Dr. Bonilla also recommended that Plaintiff "limit activities, including walking, lifting, bending, and similar physical exertion." *Id.* For clarification purposes, Dr. Bonilla provided that Plaintiff: cannot walk more than five (5) minutes at a time without resting, and can only do this three (3) to four (4) times daily; and, can lift less than five (5) pounds for periods of one (1) to two (2) minutes, but can only do so three (3) to four (4) times daily. *Id.* The other opinions from Dr. Bonilla and his colleagues largely mirror this one.

**THE FIVE-STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at § 404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the required five-step sequential evaluation process. AR at 18-19.

At step one, the ALJ must determine if the claimant is presently engaged in "substantial gainful activity" (20 C.F.R § 404.1520(a)(4)(i)), which is defined as work done for pay or profit and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

1    determined that Plaintiff had not performed substantial gainful activity during the relevant period.
2    AR at 19.
3          At step two, the ALJ decides whether the claimant's impairment (or combination of
4    impairments) is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits
5    the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148
6    (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be
7    found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the
8    following severe impairments: chronic fatigue syndrome ("CFS"), somatic symptom disorder,
9    anxiety disorder, and major depressive disorder. AR at 19. The ALJ found the following
10   impairments to be non-severe or not otherwise medically determinable: chronic migraines,
11   Hashimoto's thyroiditis, precocious puberty, mononucleosis, and Epstein-Barr virus. AR at 20-21.
12         At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or
13   combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*
14   20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe
15   impairments that are considered sufficiently severe so as to prevent any individual so afflicted
16   from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms
17   of "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at §
18   404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it
19   must meet all of the specified medical criteria—an impairment that manifests only some of those
20   criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521,
21   530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are
22   determined to be medically equivalent to the severity of that set of criteria, that person is
23   conclusively presumed to be disabled without a consideration of age, education, or work
24   experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an
25   impairment or combination of impairments that meets or equals the criteria or the severity of any
26   of the listings. AR at 21-22.
27         If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's RFC,
28   which is defined as the most that a person can still do despite the limitations associated with their

6

impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that Plaintiff retained the ability to perform work at the medium exertional level, with the additional limitations that she was able to lift or carry a maximum of twenty-five (25) pounds occasionally and frequently; occasionally stoop, kneel, crouch, and climb ladders, ropes, and scaffolds; and, frequently climb ramps and stairs. AR at 23. Plaintiff was also limited to work involving simple tasks and with no more than occasional, brief, non-intensive encounters with coworkers or the public and with no more than occasional changes in routine. *Id.*

Following the formulation of the RFC, the ALJ must determine—at step four—whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids") (20 C.F.R. Pt. 404 Subpt. P, App. 2); or, alternatively, the ALJ may rely on the testimony of a VE. *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id.*

At step four, the ALJ determined that Plaintiff did not have any past relevant work. AR at 29. At step five, based on a VE's testimony, the ALJ determined that Plaintiff can perform the requirements of an office helper, routing clerk, or small products assembler. *Id.* at 30. Accordingly, the ALJ determined that Plaintiff had not been disabled at any time during the

relevant period. *Id.* at 30.

## DISCUSSION

As discussed, the Parties agree that remand is appropriate in the present case on the grounds that the ALJ did not properly assess Plaintiff's pain and symptom testimony. Beyond this agreement, however, the Parties appear to dispute the remainder of the ALJ's decision, as well as the appropriate method of remand. Given the nature of the record, which is both undeveloped and seemingly conflicting, the court finds that remand for further administrative proceedings is the appropriate disposition of the present case.

It is well-established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well-established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id.* The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when:

> [T]here are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true.

*Id.* at 1401. The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work but entitled to benefits. *Id.* at 1398. The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, each part of which must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative

> proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates a "serious doubt" that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *See id*.

As to the first requirement of the credit-as-true test, the court finds that the record has not been fully developed and that further administrative proceedings would serve a useful purpose. This administrative hearing, as well as any ensuing ALJ decision, must comply with the instructions set forth below. Each of Plaintiff's arguments will be addressed in turn.

First, Plaintiff argues that the ALJ improperly rejected her pain and symptom testimony, as well as the third-party testimony of Plaintiff's mother. Essentially, Plaintiff argues that the ALJ misunderstood the nature of CFS, as well as how it is diagnosed. Pl.'s Mot. (dkt. 15) at 7-13. Plaintiff argues that a CFS diagnoses is necessarily made on the basis of a patient's subjective complaints, and thus it was error for the ALJ to reject the credibility of Plaintiff's complaints, particularly after other potential conditions had been ruled out through testing. *Id*.

Plaintiff is correct that a diagnosis of CFS can be properly made on a patient's subjective complaints alone. *See id.* at 8 (citing SSR 14-1p ("[A] physician can make the diagnoses of CFS based on a person's reported symptoms alone after ruling out other possible causes for the person's symptoms."), and *Reddick*, 157 F.3d at 715 ("[T]he presence of persistent fatigue is necessarily self-reported. The final diagnosis is made 'by exclusion,' or ruling out other possible illnesses.")). In the present case, however, it is undisputed that Plaintiff suffers from CFS. *See* AR

at 19 (finding by the ALJ that Plaintiff suffers from the severe impairment of CFS); *see also* Def.'s Mot. (dkt. 20) at 4 ("[T]he Commissioner does not dispute that Plaintiff has the severe medically determinable impairment of CFS, as the ALJ found at step two."). The authority to which Plaintiff cites addresses only how an ALJ is to determine whether CFS is a severe impairment. *See* Def.'s Mot. (dkt. 20) at 4. This is, of course, a distinct question from the ALJ's assessment of the credibility of Plaintiff's pain and symptom testimony. In other words, the ALJ found that Plaintiff suffered from the severe impairment of CFS, but also determined that her subjective complaints with respect to CFS and its secondary effects were not entirely credible. *See* AR at 23-26. Contrary to Plaintiff's assertion, this outcome is not necessarily erroneous. The court agrees with the Parties, however, that the ALJ's assessment of Plaintiff's pain and symptom testimony was deficient in some respects. This deficiency appears attributable, at least in part, to the conflicts and inconsistencies present in the relevant medical evidence—which will be assessed in greater detail *infra*. As such, the court finds that remand for further administrative proceeding will best address the current deficiencies, and will provide the ALJ with enough information to properly reevaluate Plaintiff's pain and symptom testimony in accordance with 20 C.F.R. § 416.929 and SSR 16-3p. The same reasoning also applies to the ALJ's rejection of the third-party statement of Plaintiff's mother, which the ALJ rejected for much the same reasons as Plaintiff's own testimony. *Id.* at 24.

Next, Plaintiff argues that the ALJ's evaluation of the relevant Listings was erroneous. Plaintiff argues that the ALJ did not properly consider Listing 14.06B, which SSR 14-1p suggests should be considered for medical equivalence where a claimant suffers from CFS. Listing 14.06B requires "[r]epeated manifestations of undifferentiated or mixed connective tissue disease, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: [1] Limitation of activities of daily living [2] Limitation in maintaining social functioning [3] Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." Plaintiff argues that the medical records demonstrate repeated manifestation of CFS, which are accompanied by severe fatigue, fever, and malaise, and that result in "significant deficits maintaining ADLs and an

10

extreme limitation in maintaining social functioning." Pl.'s Mot (dkt. 15) at 14.

The medical record, however, is not quite as clear. As discussed in more detail below, many of the medical records that Plaintiff relies on consist almost entirely of her subjective complaints. While such complaints are relevant to a diagnosis of CFS, they are not necessarily medical *findings* that the ALJ must consider at this step. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (treatment notes containing limitations based on a claimant's subjective descriptions are not "objective evidence of limitations asserted in [the medical source's] report . . . ."). Further, although Plaintiff contends that the record demonstrates "significant deficits" and "extreme limitation[s]," this appears to simply be Plaintiff's own interpretation of the medical evidence. While Plaintiff relies heavily on the opinion[s] of Dr. Bonilla, nowhere does Dr. Bonilla make a finding of "significant deficits" or "extreme limitation[s]." As with Plaintiff's pain and symptom testimony, however, the court finds that this issue will best be resolved through further administrative proceedings. It may well be that Dr. Bonilla intended to assess, or would have assessed, Plaintiff as having marked or extreme limitations in various areas of functioning. As it stands, however, his opinion simply does not do this. Remanding this matter for further proceedings will allow the ALJ to seek greater clarification with respect to Dr. Bonilla's opinion, or obtain an alternative opinion that more clearly delineates Plaintiff's limitations.

Finally, Plaintiff argues that the ALJ improperly evaluated the relevant medical opinions. As for Dr. DeSousa, Plaintiff argues that his opinion lacks probative value because it is "based on his assumption that the claimant did not suffer from CFS." Pl.'s Mot. (dkt. 15) at 15. Following a review of the relevant medical records, Dr. DeSousa provided an opinion as to Plaintiff's limitations, as well as his diagnostic impressions. AR at 98-99. As part of this opinion, Dr. DeSousa stated that Plaintiff did not fulfill the criterion for CFS. *Id.* at 99. Contrary to Plaintiff's assertions, however, such a finding does not finding necessarily render Dr. DeSousa's opinion irrelevant. While Dr. DeSousa's conclusion that Plaintiff did not have CFS might have been erroneous, this does not change the fact that he engaged in a thorough review of the medical record and assessed Plaintiff with certain limitations based on that evidence. In other words, it is

not altogether clear how the remainder of Dr. DeSousa's opinion was affected—if at all—by his conclusion that Plaintiff did not have CFS. Given this uncertainty, the court finds that further development of the record is needed. Specifically, the ALJ shall seek further clarification of Dr. DeSousa's opinion, either in the form of a questionnaire or by eliciting testimony at a hearing.

With respect to Dr. McMillan, Plaintiff effectively makes the same argument: that the opinion lacks probative value because it is assumes that Plaintiff did not have CFS. *Id.* at 16-17. Plaintiff also contends, however, that "this diagnosis is unsurprising as the [Social Security Administration] only provided Dr. McMillan with past medical records relating to office visits for acute sinusitis and major depressive disorder." *Id.* A review of the record does suggest that Dr. McMillan may not have had the full extent of Plaintiff's medical records at his disposal. *See id.* at 768-71. It is also worth noting, however, that the majority of Plaintiff's treatment for CFS occurred *after* Dr. McMillan provided his opinion.

While Plaintiff asserts that such errors render this opinion irrelevant, her argument concedes a more obvious point: that the record requires further development. By arguing that Dr. McMillan did not have all of the necessary medical records available, Plaintiff is essentially arguing that this opinion would have been different if Dr. McMillan had these records available. As such, the more appropriate solution is to remand the case to allow for further development of Dr McMillan's opinion. On remand, therefore, the ALJ shall seek further clarification of Dr. McMillan's opinion, either in the form of a questionnaire or by eliciting testimony at a hearing. Dr. McMillan must, of course, be provided with all of the relevant medical records for review.

Finally, Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Bonilla. Pl.'s Mot. (dkt 15) at 17-22. The ALJ rejected the opinions of Dr. Bonilla and his colleagues because they largely failed to describe actual limitations and, where they did, these limitations "were not supported by concrete explanations or specific clinical findings," as they were largely based on Plaintiff's subjective complaints. *See* AR at 29. The ALJ also noted that these opinions were "relatively vague," as Dr. Bonilla's recommendation that Plaintiff "refrain from strenuous activities" until her "fatigue has measurably improved" does not really define any particular limitation. *Id.* at 29 (citing *id.* at 797). Plaintiff argues that the ALJ misunderstood the nature of

12

1    CFS, such that he relied too heavily on the lack of abnormal medical findings. Pl.'s Mot. (dkt. 22)

2    at 22-23. Plaintiff also argues that it was not Dr. Bonilla's duty to "magically predict when

3    [Plaintiff's] CFS symptoms will abate . . . ." Pl.'s Reply (dkt. 21) at 4.

4          As with the other medical opinions, the court finds that the record would benefit from

5    further development. Plaintiff argues that, because the other medical opinions must be

6    disregarded, the court is required to find Plaintiff disabled because "Dr. Bonilla's opinion, under

7    any logical interpretation, supports a finding of disability . . . ." *Id.* at 3. Even if the opinions of Dr.

8    DeSousa and Dr. McMillan were disregarded, however, Dr. Bonilla's opinion—as it stands—is

9    simply insufficient to support a finding of disability. As noted by the ALJ, for example, Dr.

10   Bonilla's recommendation that Plaintiff "refrain from strenuous activities" until her "fatigue has

11   measurably improved" lacks the required level of specificity. While Dr. Bonilla was never

12   expected to "magically predict when [Plaintiff's] CFS symptoms will abate" (Pl.'s Reply (dkt. 21)

13   at 4), he also did not provide any explanation as to what "strenuous activities" and "measurably

14   improved" means. As mentioned *supra*, moreover, there is some uncertainty as to the role of

15   Plaintiff's subjective complaints in Dr. Bonilla's opinion. CFS is, of course, typically diagnosed

16   based on a patient's subjective complaints. Given the prevalence of Plaintiff's complaints in Dr.

17   Bonilla's records, however, it is not always clear whether these were simply summaries of

18   Plaintiff's subjective complaints or actual assessed limitations. *See Batson*, 359 F.3d at 1195 n.3

19   (treatment notes containing limitations based on a claimant's subjective descriptions are not

20   "objective evidence of limitations asserted in [the medical source's] report . . . ."); *see also Sager*

21   *v. Colvin*, 622 Fed.App'x 629, 629 (9th Cir. 2015) ("Nor was the ALJ required to credit [the

22   claimant's] subjective complaints merely because they were recorded in his physicians' records.").

23   As such, further clarification is necessary to determine the extent to which these complaints were

24   utilized by Dr. Bonilla. As with the opinions of Dr. DeSousa and Dr. Bonilla, therefore, the ALJ

25   shall seek further clarification of Dr. Bonilla's opinion, either in the form of a questionnaire or by

26   eliciting testimony at a hearing. In particular, the ALJ shall seek greater clarification form Dr.

27   Bonilla on the relevant limitations associated with Plaintiff's CFS—and their support in the

28   record. While not required, the court would also suggest engaging another medical expert who can

review the evidence and form an opinion. Given the existing inconsistencies among the medical opinions of record, such an opinion may prove beneficial to the expeditious resolution of this matter.

## CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff's Motion, **GRANTS** Defendant's Motion, and **REMANDS** this matter for further proceedings consistent with this Order. The ALJ is furthered **ORDERED** to send questionnaire(s) or elicit testimony from the above-mentioned medical sources to further clarify their opinions and/or to engage an additional medical expert who can review the evidence and form an opinion. The ALJ is also **ORDERED** to reevaluate Plaintiff's pain and symptom testimony in accordance with 20 C.F.R. § 416.929 and SSR 16-3p.

**IT IS SO ORDERED.**

Dated: August 31, 2023

ROBERT M. ILLMAN
United States Magistrate Judge